UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**FINCH PAPER, LLC,**

                                 **Plaintiff,**

  vs.                                                                                              1:21-CV-00588
                                                                      (MAD/CFH)

**PARK FALLS INDUSTRIAL
MANAMGEMENT, LLC, ERIC J.
SPIRTAS, YOUNG LIU, and W.
CONNOR SPIRTAS,**

                                 **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **WHITEMAN, OSTERMAN LAW FIRM**<br>One Commerce Plaza, Suite 1900<br>Albany, New York 12210<br>Attorneys for Plaintiff | **CHRISTOPHER M. MCDONALD, ESQ.**<br>**HILDA MARINELLO CURTIN, ESQ.** |
| **DANNA MCKITRICK, P.C.**<br>7701 Forsyth Blvd., Suite 1200<br>St. Louis, Missouri 63105<br>Attorneys for Defendants | **ROBERT L. DEVEREUX, ESQ.** |
| **DREYER BOYAJIAN LLP**<br>75 Columbia Street<br>Albany, New York 12210<br>Attorneys for Defendants | **JOHN J. DOWD, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On May 21, 2021, Plaintiff Finch Paper, LLC commenced this action against Defendants Park Falls Industrial Management, LLC ("Park Falls"), Eric J. Spirtas, Young Liu, and W. Connor Spirtas, asserting claims of breach of contract, conversion, and fraud. *See* Dkt. No. 1. Plaintiff also moved for a temporary restraining order seeking attachment of Defendants' bank accounts

and certain goods in Defendants' warehouse, as well as expedited discovery. *See* Dkt. No. 2. After Defendants failed to answer or otherwise appear in this matter, Plaintiff requested and the Clerk of the Court entered a certificate of default on August 6, 2021. *See* Dkt. Nos. 11, 12.

Currently before the Court are (1) Defendants' motion to set aside the Clerk's entry of default, *see* Dkt. No. 18; (2) Plaintiff's cross motion for default judgment against Defendants, *see* Dkt. No. 24; and (3) Plaintiff's motion to sever its claims against Park Falls from its claims against Defendants Eric Spirtas, Young Liu, and Connor Spirtas (collectively, the "Individual Defendants"), *see* Dkt. No. 29. For the reasons that follow, Defendants' motion to set aside the entry of default is granted, Plaintiff's cross motion for default judgment is denied, and Plaintiff's motion to sever Park Falls is denied.

## II. BACKGROUND

According to the complaint, Park Falls is a Nevada limited liability company operating a paper mill in Park Falls, Wisconsin, and the Individual Defendants are employees of Park Falls. *See* Dkt. No. 1 at ¶ 9. On March 12, 2021, Plaintiff—a New York paper manufacturing corporation—entered into a Supply and Warehousing Agreement (the "Agreement") with Park Falls, wherein Park Falls agreed to sell 3,500 Air Dried Metric Tons ("ADMT") of rolled dried pulp (a raw material in the production of paper) to Plaintiff at a price of $344.15/ADMT, for a total of $1,204,525.00. *See id.* at ¶¶ 20-21. Plaintiff alleges that the Agreement also provided that legal title and ownership of the 3,500 ADMT of dried pulp would transfer to Plaintiff upon payment in full, and that Park Falls agreed to store it in its warehouse in Wisconsin. *See id.* at ¶ 26. On March 12, 2021, Plaintiff paid Park Falls $1,204,525.00 and executed a Bill of Sale for the dried pulp. *See id.* at ¶¶ 23-24. Between that date and May 14, 2021, Plaintiff requested and received approximately 854 ADMT of the dried pulp. *See id.* at ¶ 27.

Plaintiff then alleges that, "[o]n or about May 14, 2021, a representative of Park Falls advised [it] that Park Falls was in receivership and that, despite the fact that it should have approximately 2,646 ADMT of [dried pulp], it only had approximately 415 ADMT." *See id.* at ¶ 28. Plaintiff asserts that it contacted Defendant Eric Spirtas, who "[i]nitially, ... claimed that there had been a 'substitution' of goods" but "[e]ventually ... conceded that [Plaintiff's dried pulp] had been sold to third-parties." *See id.* at ¶ 30. On May 18, 2021, Plaintiff alleges that it exercised its contractual right to inspect Park Falls' warehouse and observed only approximately 348 ADMT of the dried pulp it had purchased. *See id.* at ¶ 33. Plaintiff believes that the missing 2,298 ADMT of dried pulp—for which it paid $790,856.70—was sold by Defendants to third parties for $650/ADMT. *See id.* at ¶¶ 31, 34. On May 18, 2021, Plaintiff sent correspondence to Defendants demanding that they immediately remit either the fair market value of the dried pulp they resold or suitable substitute goods. *See id.* at ¶ 35. Upon Defendants' refusal to meet the demands, Plaintiff commenced this action.

Defendants now argue that their motion to set aside the entry of default should be granted because their failure to appear was an innocent mistake, they have a meritorious defense, and Plaintiff would not be prejudiced. *See* Dkt. Nos. 18-4, 27. Plaintiff opposes the motion and cross-moves for default judgment. *See* Dkt. No. 24-7. Plaintiff also moves to sever its claims against Park Falls, noting that Park Falls has applied for Chapter 7 bankruptcy and, pursuant to 11 U.S.C. § 362(a), all judicial proceedings against Park Falls have been stayed. *See* Dkt. No. 29-6. Plaintiff asserts that it would be severely prejudiced by an inability to recover from the Individual Defendants while the bankruptcy proceeding is resolved because, "[i]t would be unjust to reward the Individual Defendants with a stay where their actions continue to demonstrate their fraudulent charade to avoid their legal obligations." *Id.* at 10. Defendants oppose the motion to sever,

3

arguing that severing Park Falls would be inefficient, a waste of judicial resources, prejudice the Defendants, and could cause inconsistent results. *See* Dkt. No. 30.

## III. DISCUSSION

A.     **Motion to Set Aside the Entry of Default**

*1. Legal Standard*

The court may set aside an entry of default for good cause shown. *See* Fed. R. Civ. P. 55(c). While vacating entry of default is in the discretion of the district court, there is a "strong 'preference for resolving disputes on the merits.'" *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)). Defaults generally are disfavored and are reserved for rare occasions. *See State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). "Accordingly, in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." *Green*, 420 F.3d at 104 (citing *Powerserve Int'l, Inc.*, 239 F.3d at 514).

Where there has been a certificate of default, but no default judgment, the court decides the motion to vacate the entry of default pursuant to Fed. R. Civ. P. 55(c), which is more lenient than the standard to set aside a default judgment under Fed. R. Civ. P. 60(b). *See Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). Despite the different standards, the same "good cause" factors are applied in Rule 55(c) and Rule 60(b) motions. *See Enron Oil Corp.*, 10 F.3d at 96 ("Although the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment ... because the concepts of

4

finality and litigation repose are more deeply implicated in the latter action") (internal citation omitted).

"When determining whether there is 'good cause' to vacate an entry of default under Rule 55(c), a district court must consider three factors: (1) the willfulness of the default; (2) the existence of a meritorious defense to the defaulted claims; and (3) the level of prejudice that the non-defaulting party might suffer should relief be granted." *W.B. David & Co., Inc. v. De Beers Centenary AG*, 507 Fed. Appx. 67, 69 (2d Cir. 2013) (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001)). "'[N]o single factor is dispositive.'" *Id.* (citation omitted); *see also Wagstaff–El v. Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir. 1990) (holding that the district court did not abuse its discretion by vacating a default judgment despite a finding of willfulness, because the defaulting party had a meritorious defense and the plaintiff would not be prejudiced if the default was vacated). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted). "When doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* "Good cause" should be construed generously. *See id.* "While courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan*, 652 F.2d at 277.

### 2. *Willfulness*

A default is willful when the conduct is "'more than merely negligent or careless,' but is instead 'egregious and ... not satisfactorily explained.'" *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d

Cir. 2015) (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)).  For example, "[a] default is deemed willful where a defendant simply ignores the complaint without action." *Circuito Cerrado, Inc. v. LV Foods, Inc.*, 296 F.R.D. 122, 126 (E.D.N.Y. 2013) (internal citations and quotation marks omitted).

Here, the Court does not find that Defendants engaged in intentional delay or willfully disregarded any deadlines.  When this action was commenced, Defendants were represented by different counsel who waived service of process on their behalf.  *See* Dkt. No. 7.  Defendants allege that they were not informed by that counsel that he had waived service.  *See* Dkt. No. 18-1 at ¶ 8.  Defendants' current counsel thus asserts that, "due to innocent mistake or inadvertence," he was not made aware of the waiver of service and did not know that the time period for appearing and filing a responsive pleading was running.  *Id.* at ¶ 9.  This explanation is bolstered by current counsel's relatively swift response to the entry of default[1] and the affidavit of Defendant Eric Spirtas.  *See* Dkt. No. 30 at 9 ("Because I was not aware of the existence of any impending deadlines to file a formal response to this lawsuit, I was not able to inform my current counsel of any such deadline").

Plaintiff argues that counsel's explanation "rings hollow" because, "between the time that Defendants admitted and waived service and their eventual default, they engaged in settlement negotiations with [Plaintiff] that made specific reference to the existence of the pending litigation."  Dkt. No. 24-7 at 9.  However, Plaintiff does not allege that Defendants' current counsel was representing Defendants at the time these negotiations occurred, and Defendant Eric Spirtas plausibly alleges that Defendants mistakenly thought that the settlement negotiations were

---

[1] The motion for admission *pro hac vice* was filed three days after entry of default, *see* Dkt. No. 15, and the motion to set aside the default was filed seventeen days after entry of default, *see* Dkt. No. 18.

6

being made before any litigation had been commenced.  *See* Dkt. No. 27 at 9 ("Prior to the Clerk's Entry of Default in this case, it was my understanding that [Defendants' prior counsel] was negotiating with [Plaintiff] in an attempt to resolve all disputes relating to [Plaintiff's] purchase of wood pulp [from] Park Falls.  I did not understand that any of the back and forth of those negotiations had resulted in any decision that caused the imposition of a deadline that if not met could result in the entry of a default judgment against the Defendants").

To the extent Plaintiff argues that Defendants default "might be considered willful" without an affidavit from Defendants' prior counsel, Dkt. No. 24-7 at 10, the Court has not identified, and Plaintiff does not offer, any authority suggesting that an affidavit from prior counsel would be required here.  The Court therefore declines to find willfulness on that basis, especially where Defendants have already supported their motion with a declaration from their current counsel and an affidavit from one of the Individual Defendants.  Finally, Plaintiff argues, again without support, that Defendants' current counsel should be deemed to have "constructive notice" of the existence of prior counsel and the waiver of service because the waiver was electronically filed on the Court's ECF system.  *See id.* at 9.  However, the Court does not find that Defendants' current counsel can reasonably be held to have had constructive notice of filings made by a different law firm in an action that he was allegedly unaware of.  *Cf. U.S. Bank Natl. Assn. v. Nanan*, No. 20-CV-849, 2022 WL 203100, *2 (E.D.N.Y. Jan. 24, 2022) (holding that an attorney had constructive notice of the docket entries concerning his client where he had "personally taken an active role in this litigation" and "twice fil[ed] items on the docket").

### 3. Meritorious Defense

"In order to make a sufficient showing of a meritorious defense ... the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial,

7

would constitute a complete defense." *Green*, 420 F.3d at 109 (quoting *McNulty*, 137 F.3d at 740). In other words, a "'defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Gardner v. Lefkowitz*, 737 Fed. Appx. 597, 598 (2d Cir. 2018) (quoting *Am. All. Ins. Co.*, 92 F.3d at 61).

Defendants have presented a meritorious defense. Defendants allege that (1) "Plaintiff rejected as non-conforming goods the same goods over which it now alleges a claim of conversion"; (2) "Plaintiff had no title to or other property interest in the goods it alleges were converted"; (3) "an addendum to the sales contract was negotiated after Plaintiff rejected the goods as non-conforming"; (4) "the individual defendants were not signatories to any contracts with Plaintiff in their personal capacities"; and (5) "no grounds have been pled sufficient to pierce the corporate veil." Dkt. No. 18-1 at ¶ 10; *see also* Dkt. No. 18-3. Defendants have supported these allegations with a declaration from Defendants' current counsel, *see* Dkt. No. 18-1, and an affidavit from Defendant Eric Spirtas, *see* Dkt. No. 27 at 8-10.

Plaintiff does not argue that these claims would not present a complete defense if proven at trial. Rather, Plaintiff argues that Defendants failed to meet their burden because they did not submit evidence to "establish" their defenses—such as evidence establishing that Plaintiff rejected non-conforming goods, or a copy of the alleged addendum to the Agreement. Dkt. No. 24-7 at 10-11. Plaintiff does not support this argument with any citations to legal authority, and the Court's own research indicates that Defendants are not required to meet such a high evidentiary standard. *See Bricklayers & Allied Craftworkers*, 779 F.3d at 187 ("Although in an answer general denials are enough to raise a meritorious defense, the moving party on a motion to reopen the default must support its general denials with some underlying facts"). Here, Defendants have offered more than general or conclusory denials of Plaintiff's claims in an

answer—they have alleged a number of specific facts, including that Plaintiff had previously rejected the products at issue in this claim and that an addendum to the Agreement was negotiated, and supported those facts with a declaration from Defendants' counsel and the affidavit of one of the Individual Defendants.

### *4. Prejudice*

"Some delay is inevitable when a motion to vacate a default judgment is granted; thus, 'delay alone is not a sufficient basis for establishing prejudice.'" *Green*, 420 F.3d at 110 (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). "Something more is needed. For example, delay 'may thwart plaintiff's recovery or remedy. It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Id.* (quotation omitted).

The Court finds that Plaintiff will suffer little prejudice should the Court grant Defendants' motion. This litigation is still in its early stages, and there has been only a brief delay between the entry of default and Defendants' motion to set the default aside. Plaintiff does not suggest that it has suffered prejudice as a result of this delay, instead arguing that "there is more than a legitimate concern that Defendants will be able to divert funds to avoid ... satisfying a judgment." Dkt. No. 24-7 at 11. As evidence of the legitimacy of this concern, Plaintiff asserts that Defendants "diverted the proceeds from their unlawful sale of [Plaintiff's] products to satisfy debts owed to third-parties." Dkt. No. 24-7 at 11. The Court is not persuaded that Defendants' use of the proceeds from the resale of the dried pulp to pay debts plausibly indicates that Defendants will fraudulently divert funds to thwart Plaintiff's recovery, especially when the core of Defendants case appears to be that the resale was not a breach of contract or otherwise improper. *Cf. Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 455 (S.D.N.Y.

2007) (holding that there was a legitimate concern that increased delay would allow the defendants to divert funds where a prior proceeding found that the "defendants had wrongfully diverted $6.7 million in violation of a temporary restraining order, and ... were held in contempt of court").

Accordingly, Defendants' motion to set aside the entry of default is granted and Plaintiff's cross motion for default judgment is denied.

**B.     Motion to Sever**

Rule 21 of the Federal Rules of Civil Procedure provides that "the court may at any time, on just terms, ... sever any claim against a party." "The moving party bears the burden of demonstrating that 'severance is required to avoid prejudice or confusion and to promote the ends of justice.'" *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015) (quoting *Agnesini v. Doctor's Assoc., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011)) (other citations omitted). "While '[t]he Federal courts view severance as a procedural device to be employed only in exceptional circumstances,' ... district courts have broad discretion to sever any party or claim from an action." *Id.* (internal quotation and other citations omitted). Although the Court of Appeals has not set forth specific criteria governing severance, courts in this Circuit generally employ the following factors on a motion to sever:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Surlock v. Delaney*, No. 5:11-CV-1121, 2016 WL 3200273, *54 (N.D.N.Y. June 8, 2016); *see also Gokdogan v. Slap Shot Pizza Enterprises Ltd.*, No. 20-CV-5201, 2021 WL 4441417, *11

10

(E.D.N.Y. Sept. 27, 2021); *LG 37 Doe v. Nail*, No. 1:20-CV-00217, 2021 WL 164285, *3 (W.D.N.Y. Jan. 19, 2021); *In re Methyl Tertiary Butyl Ether Products Liab. Litig.*, 247 F.R.D. 420, 424 (S.D.N.Y. 2007). "Only one of the foregoing factors needs to weigh in favor of severance for the motion to be granted, but courts generally only sever claims when more than one criterion is met." *Mosca v. City of New York*, No. 17-CV-4327, 2019 WL 5592855, *2 (E.D.N.Y. Oct. 30, 2019); *see also In re Methyl Tertiary Butyl Ether Products Liab. Litig.*, 247 F.R.D. at 424.

  Park Falls has applied for Chapter 7 bankruptcy and, as a result, all judicial proceedings against Park Falls have been stayed pursuant to 11 U.S.C. § 362(a). However, "[t]he automatic stay of Chapter 7 Bankruptcy, 11 U.S.C. § 362(a), is limited to debtors and ordinarily does not extend to non-bankrupt [co]defendants," even when the action is "against a corporate debtor which is a codefendant with its officers and directors." *JSO Associates, Inc. v. Awrey Bakeries, LLC*, No. 13-CV-6035, 2014 WL 2882896, *2 (E.D.N.Y. June 25, 2014). Thus, some courts have found severance to be appropriate "'where a non-debtor codefendant may be held independently liable of the debtor,'" *Id.* (citation omitted), or "where the bankrupt co-defendant was not indispensable," *see Cashman v. Montefiore Med. Ctr.*, 191 B.R. 558, 561 (S.D.N.Y. 1996). However, even in such a situation, the Court must still "consider the potential overlap in discovery, witnesses, and other evidence that would be presented at separate trials should [a bankrupt defendant] be severed." *Id.* at 562. Ultimately, the "'decision whether to grant a severance motion is committed to the sound discretion of the trial court.'" *Erausquin v. Notz, Stucki Mgt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011) (quoting *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988)).

  Here, even assuming that Park Falls is not indispensable and that the Individual

Defendants could be held independently liable, the Court finds that the interests of efficiency and the lack of prejudice against Plaintiff militate against granting severance. All three of Plaintiff's claims arise out of the same transaction and contract, present common questions of law and fact, and necessarily involve the same witnesses and documentary proof. This substantial overlap in the witnesses, parties, and evidence argues strongly against severance in the interests of judicial economy and preventing potentially inconsistent results. Plaintiff claims that it can "fully pursue its claims and obtain relief against the Individual Defendants without the inclusion of Park Falls as a party and participant in this litigation" because its "cause of action against Park Falls is for breach of contract," while its causes of action "against the Individual Defendants … sound in fraud." Dkt. No. 29-6 at 7. That assertion is not supported by the complaint, however, which asserts the breach of contract, conversion, and fraud claims against every Defendant, without making any of the above distinctions between Park Falls and the Individual Defendants. *See* Dkt. No. 1 at ¶¶ 37-65. Plaintiff also claims that, "by filing for bankruptcy, the Individual Defendants appear to have acted in direct contravention of this Court's [May 21, 2021] order"[2] and, therefore, it would be "manifestly unjust" and prejudicial to "reward the Individual Defendants with a stay where their actions continue to demonstrate their fraudulent charade to avoid their legal obligations." Dkt. No. 29-6 at 9-10. The Court, however, is not convinced that Park Fall's bankruptcy filing indicates, in any way, an attempt by the Individual Defendants to avoid their legal obligations.

      Although Plaintiff points to several other cases where district courts have exercised their

---

[2] The order Plaintiff refers to is the May 21, 2021 order to show cause, signed by this Court, enjoining Defendants from "transferring, disposing of, assigning, or otherwise secreting the proceeds of any sale of Plaintiff's Products to third-parties" during the pendency of Plaintiff's motion for a temporary restraining order. *See* Dkt. No. 6 at 2.

discretion to sever a bankrupt defendant from its codefendants, this Court finds those cases to be distinguishable. Unlike the cases cited by Plaintiff, the Individual Defendants here have not signed personal guarantees, *see E.I. Du Pont De Nemours & Co. v. Fine Arts Reprod. Co., Inc.*, No. 93 CIV. 2462, 1995 WL 312505 (S.D.N.Y. May 22, 1995) (severing claims against an individual defendant who executed two personal guarantees of payment in the event that the corporate defendant, who had filed for bankruptcy, did not pay on a lease); and all of the Defendants in this action have appeared and asserted defenses, *see JSO Associates, Inc. v. Awrey Bakeries, LLC*, No. 13-CV-6035, 2014 WL 2882896 (E.D.N.Y. June 25, 2014) (holding that severance was appropriate in a matter where none of the defendants appeared); *Broad. Music, Inc. v. N. Lights, Inc.*, 555 F. Supp. 2d 328 (N.D.N.Y. 2008) (same).

Accordingly, Plaintiff's motion for severance is denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to set aside the Clerk's entry of default (Dkt. No. 18) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's cross motion for default judgment (Dkt. No. 24) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion to sever its claims against Park Falls from its claims against the Individual Defendants (Dkt. No. 29) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 23, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge